Linda Elkin et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Margaret Goldstein et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued May 6, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and WILLIAMS, JR. Judge MAC-PHAIL did not participate.

*Kathleen Herzog Larkin, Blank, Rome, Comisky & McCauley,* for petitioners.

*Mary Frances Grabowski,* Assistant Attorney General, for respondent.

*Joseph M. Hankins, Duane, Morris & Heckscher,* for Amicus Curiae, Kensington-Kingstowne Child Care Center.

*John S. Bevan, Duane, Morris & Heckscher,* for Amicus Curiae, Associated Day Care Center, Inc.

OPINION BY JUDGE BLATT, August 27, 1980:

The petitioners in these consolidated cases are two groups of parents of pre-school children who are appealing from an order of the Department of Public Welfare (DPW) which terminated in part their eligibility for financial assistance for their children's day-care program at the Paley Day Care Center in Philadelphia.

The petitioners had been receiving federal assistance for this program participation pursuant to Title XX of the Social Security Act (Title XX), 42 U.S.C. §1397 et seq., which, like many federal grant programs, provides that state agencies, in this case

the DPW, shall administer the program and set specific eligibility criteria for recipients. A major Title XX restriction concerning the use of the funds by the DPW is that the funds may not be used to replace or reduce existing state subsidization of social or educational services. Section 2002(a)(10) of Title XX, 42 U.S.C. §1397a(10); 45 C.F.R. §228.43.[1] In 1977, the DPW's legal counsel, by way of an unpublished, intra-agency memorandum, interpreted this federal policy to require that Title XX assistance for day-care services could be offered on a full-day basis to kindergarten-age children only if the child's respective school district does not provide kindergarten.[2] This memorandum also stated that, where a school district does provide a kindergarten, day-care services for kindergarten-age children of that school district may be financed by Title XX funds only to the extent that the hours of day-care services do not overlap the hours of the kindergarten classes. This policy, which the DPW adopted was the basis for its termination of assistance in both cases here concerned and it is the issue in each appeal. Because the cases involve significantly different procedural issues, however, we will discuss and resolve each case separately.

*No. 1283 C.D. 1979*

The DPW notified the Paley Day Care Center in 1979 that Title XX funding would not be available

---

[1] 42 C.F.R. §228.43 states in part:

FFP is not available for any educational service made generally available through any State or local educational agency to residents of the State without cost and without regard to their income.

[2] Section 503 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §5-503, permits each school district to choose whether or not to provide a kindergarten program.

for kindergarten-age children for day-care services which overlapped the time of their school district's kindergarten classes. In a letter dated January 24, 1979, therefore, Paley informed the parents of the affected children that, effective immediately, their Title XX services would be curtailed pursuant to the new DPW policy. The parents of 34 children contested that determination and, in May of 1979, a DPW hearing examiner determined that, because the DPW's interpretation of the federal law had not been promulgated in accordance with the provisions of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1101 et seq., the policy was not enforceable by the DPW. This opinion was reversed by the Hearing and Appeals Unit of DPW, which concluded that the agency was bound by the DPW counsel's unpublished interpretation of Title XX and this appeal followed.[3]

While the decision of the DPW to curtail the benefits here concerned has the appearance of an individual adjudication, it was clearly based on the DPW's conclusion that children who can take advantage of free kindergarten classes cannot also avail themselves of Title XX funds for day-care services offered at the same time of the day as kindergarten classes. Because this conclusion is a rule of general application which could have been enacted by the legislature without violating the constitutional provision against special legislation,[4] DPW's

---

[3] Because the questions raised here are of a recurring nature which are capable of repeatedly avoiding review as the children affected by the DPW policy only remain at the kindergarten age for one year, these cases are not moot. *See Port Authority of Allegheny County v. Amalgamated Transit Union*, 45 Pa. Commonweath Ct. 464, 405 A.2d 1022 (1979).

[4] Pa. Const. art. III, §32.

conclusion concerning kindergarten-age children falls with the definition of a "regulation" under the Commonwealth Documents Law,[5] and, to be given effect, we believe that it must therefore be promulgated in accordance with the Commonwealth Documents Law. *Redmond v. Milk Marketing Board,* 26 Pa. Commonwealth Ct. 368, 363 A.2d 840 (1976); *Pittsburgh v. Blue Cross of Western Pennsylvania,* 4 Pa. Commonwealth Ct. 262, 286 A.2d 475 (1971), *rev'd on other grounds,* 448 Pa. 466, 294 A.2d 892 (1972). The DPW having failed to meet these requirements, therefore, its intra-agency memorandum here concerned cannot be given the force or effect of a regulation. *Newport Homes, Inc. v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975). We must therefore reverse the DPW order which directed that from the date of the said notification, the petitioners here were not entitled to Title XX funds.

*No. 2291 C.D. 1979*

The parents here concerned contested a DPW determination of August 23, 1977 and had a hearing in September of 1979. The hearing examiner denied their appeal by an order dated October 16, 1979. The distinguishing factor between this case and that of No. 1283 C.D. 1979 is that on June 23, 1979, the DPW published its Comprehensive Annual Services Program Plan (Annual Plan) which delineated the eligibility requirements for Title XX funds. 9 Pa. B. 1969. These regulations incorporated the DPW's prohibition of the use of Title XX funds for day-care services which overlapped kindergarten programs. 9 Pa. B. 1969 at 1976, 1980, 2029. The petitioners con-

---

[5] Section 1102(12) of the Commonwealth Documents Law, 45 P.S. §1102(12).

tend here, however, that these regulations are inconsistent with the express purpose of Title XX and that they must be overturned as an improper exercise by the DPW of its rule-making authority.

The Annual Plan was promulgated by the DPW pursuant to an express grant of authority by Congress to state welfare agencies to establish standards of eligibility for the use of Title XX funds. Section 2002 of Title XX, 42 U.S.C. §1397a; 45 C.F.R. §228.22. It is well settled that an administrative regulation which is promulgated pursuant to such a delegation of authority is a legislative regulation and, in most circumstances, it has the same force of law as a statute. *Pennsylvania Department of Transportation v. Byrd*, 41 Pa. Commonwealth Ct. 38, 399 A.2d 425 (1979). It has also been established, however, that "[a] legislative rule is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Pennsylvania Assoc. of Life Underwriters v. Insurance Department*, 29 Pa. Commonwealth Ct. 459, 462, 371 A.2d 564, 566 (1977) (quoting 1 K. C. Davis, *Administrative Law Treatise*, §5.03 at 299-300).

The DPW contends, initially, that because its Annual Plan at 9 Pa. B. 1969 was approved by an officer of the then Department of Health, Education and Welfare, as required by 45 C.F.R. §228.34, its regulations are consistent with the goals of Title XX and are reasonable per se. By its very nature, however, the federal review procedure does not permit an appraisal of the reasonableness of the Annual Plan as it will be applied to unforeseeable factual situations, such as the one in this case. The federal approval is therefore entitled to little weight in our consideration here.

For the purposes of determining the reasonableness or unreasonableness of the DPW regulations, we note that the express goals of the federal enabling statute are, in part, as follows:

> For the purpose of encouraging each State, as far as practicable under the conditions in that State, to furnish services directed at the goal of—
>
> (1) achieving or maintaining economic self-support to prevent, reduce or eliminate dependency,
>
> (2) achieving or maintaining self-sufficiency, including reduction or prevention of dependency,
>
> (3) preventing or remedying neglect, abuse, or exploitation of children and adults unable to protect their own interests, or preserving, rehabilitating or reuniting families,
>
> . . . .

42 U.S.C. §1397 (footnote omitted).

Turning therefore to an anlysis of the facts presented in No. 2291 C.D. 1979 to determine if the practical application of the DPW regulations is reasonable and consistent with the goals of Title XX, we note that factual stipulations in the record indicate that approximately 80 percent of the 52 children affected by the DPW ruling come from single parent homes, and the other children come from homes where both parents either work or are students. The testimony of several of the parents indicates, moreover, that they will be unable to take time off from their jobs to transport their children to the local kindergarten for a session of only a few hours,[6] and

---

[6] The kindergarten program at the Farrel School, where the students concerned would attend, offers alternative kindergarten classes for two and one-half hours in the afternoon and three and one-half hours in the morning.

then transport the children back to the Paley Day Care Center.

As for the parents' option of permitting their children to walk from the Paley School to the kindergarten, a distance of two city blocks which involves crossing two busy intersections, the parents who testified indicated that they would withdraw their children from the Paley School rather than submit to this alternative. And further evidence reveals that the withdrawal of their children from the school would prevent many of the parents from working full-time although they need the income so derived.

Based on this evidence, the hearing examiner below candidly stated in her findings that the DPW regulations present the petitioners with the unappealing choice of either forcing their children to walk to kindergarten, which she stated involved obvious risks, or of jeopardizing the jobs of the parents. In addition, we believe that the facts also raise the unattractive alternative that the children may be left at home, unattended, while the parents continue to work. We must hold, therefore, that these alternatives to continued Title XX funding for kindergarten-age children are unreasonable and inconsistent with the goals of Title XX, which are both to prevent and to remedy the neglect of children and to achieve the self-sufficiency of families.

The orders of the DPW in each case will therefore be reversed.

Judge MENCER dissents to No. 2291 C.D. 1979.

## ORDER

AND Now, this 27th day of August, 1980, the orders of the Department of Public Welfare in the above-captioned cases are reversed.