Mercy Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued June 10, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Eric W. Springer*, with him *Barbara A. Blackmond* and *James C. McManus, Horty, Springer & Mattern*, for petitioner.

*Julia E. Gabis*, Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, September 21, 1982:

Mercy Hospital of Altoona (Hospital) appeals from a decision of the State Health Facility Hearing Board (Board) which affirmed a determination of the Pennsylvania Department of Health (Department) that the

Hospital's plan to organize a rehabilitation unit was reviewable under the certificate-of-need provisions of the Health Care Facilities Act (Act).[1]

On December 22, 1980, following an informal telephone discussion with the Department in which the Hospital described its plan to activate a ten-bed dedicated unit of medical/surgical beds to be used for rehabilitation care, it submitted a follow-up letter to the Department outlining its plan. The Hospital claims that the letter was intended to confirm the alleged earlier telephone advice from the Department that the proposal was not reviewable; however, upon receiving the letter on December 26, 1980, the Department treated it as a letter of intent requesting a determination as to reviewability and assigned a certificate-of-need project number to it. After internal staff review and consultation with the Keystone Health Systems Agency, the local health systems agency involved, the Department issued a determination on January 30, 1981 that the proposal was reviewable as an addition of a health service pursuant to Section 701(a)(4) of the Act, 35 P.S. §448.701(a)(4). The decision, mailed on February 4, 1981, was received by the Hospital on February 5, 1981, whereupon it appealed the "Determination of certificate-of-need reviewability" to the Board. On March 13, 1981, in response to an order of the Board, the Department issued a statement setting forth the reasons for its January 30, 1981 determination. On November 13, 1981, following a hearing, the Board affirmed the Department's determination and dismissed the Hospital's appeal. This appeal followed.

The Department has moved, *inter alia*, that the appeal be quashed because the Board's decision is interlocutory and therefore not within our jurisdiction

---

[1] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§448.101-448.904.

over "final orders" of state government agencies pursuant to Section 763(a) of the Judicial Code, 42 Pa. C. S. §763(a).

*Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978), is instructive here:

> It is, of course, well settled that an appeal will lie only from a final order unless otherwise permitted by statute.... A final order is one which usually ends the litigation, or alternatively, disposes of the entire case.... In determining what constitutes a final order we have followed the approach of Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949), in that we look to "a practical rather than technical construction" of an order.... Under Cohen, an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.... We have also said that if the practical consequence of the order by the trial court is effectively to put an appellant "out of court" the order will be treated as final.... Similarly, an order is "final" if it precludes a party from presenting the merits of his claim to the lower court.

*Id.* at 72-74, 394 A.2d at 544-45 (citations and footnote omitted).

The order before us can hardly be considered separable from or collateral to the main cause of action. In fact, it is the very underpinning of the action in that it establishes the Department's right to review the proposal. The right involved, while important, is not "too important to be denied review," and the

claimed right will not be irreparably lost if the matter is permitted to reach final conclusion within the Department, at which time it will be ripe for appellate review, if such is then desired.

This appeal is premature and we will, therefore, grant the Department's motion to quash.

## ORDER

AND, Now, this 21st day of September, 1982, the motion of the Department of Health to quash the appeal of Mercy Hospital from an order of the State Health Facility Hearing Board in the above-captioned matter is granted.

----

DISSENTING OPINION BY JUDGE CRAIG:

Here the State Health Facility Hearing Board's action was expressly a final dismissal of the entire case which Mercy Hospital had filed by means of an initiating appeal paper expressly confining the subject matter of the case to "Determination of certificate-of-need reviewability." The board totally disposed of that case; the board did not remand to the department.

Under *Pugar v. Greco*, 483 Pa. 68, 72-74, 394 A.2d 542, 544-45 (1978), the board was the "court" in this case, and the board's dismissal of the hospital's appeal put the hospital "out of court." The department was not the "court."

The department's theory appears to be that *future* action of the *department*, granting or denying the proposal, is necessarily an integral part of the *present* case as brought to the board. However, because the hospital's notice of appeal expressly carried only the reviewability determination to the board, the ultimate

issuance or refusal of a certificate of need is external to the present proceeding.[1]

Moreover, under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), as adopted in the *Pugar* passage cited above, an order is treated as final and appealable if "the question presented" involves a right too important to be denied review and "is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost...."

Here the key question presented from the outset by the hospital to the board,[2] and decided by the board, was whether or not the department is legally disabled from reviewing the hospital's project proposal because of the department's failure to promulgate reviewability criteria in proper regulations as required by the Health

---

[1] This situation is not analogous to that where a tribunal makes a preliminary determination that it has jurisdiction; under our present law, such a preliminary determination by a tribunal *as to its own jurisdiction* is interlocutory and not appealable as of right. The present case instead is one seeking a determination as to the function of an agency *other* than the adjudicative tribunal.

[2] Recognizing that the hospital raised the basic issue of non-promulgation of criteria in its appeal to the board, pursued the facts relating thereto on the record, and received an explicit decision from the board negativing the hospital's position, the department nevertheless argues that the hospital did not present all the statutory citations until the point of its post-hearing brief to the board, and therefore the department contends that the hospital should not be heard with respect to such alleged "new issues" here. However, the actual issue is the alleged failure of the department to promulgate criteria in advance; the hospital's reference to additional statutory provisions is simply a citation of legal authority in support of the non-promulgation issue, not the raising of any new issue in itself. Our procedural principles do not require a litigant to express all citations of authority in the initial pleading or appeal paper, under pain of being barred from making reference to such citations ever after.

Care Facilities Act[3] in accordance with constitutional principles.

Because, as noted below, a thorough examination of that question conclusively shows that the department has failed to meet the statutory and constitutional mandates, the "claimed right" of the hospital — to be subjected to review pursuant to criteria determined in advance — will indeed be lost if we abstain and permit the department to proceed upon the ad hoc reviewability basis made clear in the record before the board.

In the Act, the legislature clearly imposed upon the department the responsibility of promulgating its reviewability criteria publicly in order to exercise its crucial statutory functions. In Section 601 of the Act,[4] subsection (e) provides:

(e) The department shall also publish a notice of the availability of proposed regulations relating to certificate of need and any revisions thereof in accordance with the designation agreement with the Secretary of Health, Education and Welfare, if any, in at least two newspapers in general circulation in the Commonwealth, together with a place they may be examined and copied by interested persons.

Subsection (f) provides that proposed regulations establishing certificate of need review procedures "and criteria" shall be distributed by the department, not only to the Statewide Health Coordinating Council, but also to each health systems agency. Subsection (h) pertinently requires:

(h) Prior to review by the department of new institutional health services under this Act, the

---

[3] Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§448.101-448.904.

[4] 35 P.S. 448.601.

department shall disseminate to all health care facilities and health maintenance organizations within the Commonwealth, and shall publish in one or more newspapers in general circulation within the Commonwealth a description of coverage of the certificate of need program for review, as determined under regulations, and any revisions thereof shall be similarly disseminated and published.

Also to be noted is the legislature's emphasis upon the importance of regulations as indicated by subsections (c) and (d) of Section 601, both of which require regulations "which relate to certificate of need" to be presented to the General Assembly for review.

In the record there are a number of straightforward acknowledgments on behalf of the department that departmental criteria for this determination were articulated only internally,[5] and none were pro-

---

[5] The department's deputy secretary, after noting that the Act "is a fairly general law as the statute is written," acknowledged that:

We are just in the process now of developing regulations to follow the statute.

The deputy secretary also testified that

— to determine reviewability, the department has put together a series of indicators, so that, if some or all of them are met, "we probably should review it. These are only indicators. They don't have the weight of law...;"

— as to certain aspects of reviewability policy, the department "decided not to put it into regulation ... we would not have any flexibility...," but intended "to look at these on an ad hoc, case-by-case basis to try and determine whether or not that service existed before the law;

— applicants are to be informed of the reviewability policies by subsequent publication in the Pennsylvania Bulletin, but, before that, "there are always going to be a few applicants who are the first ones down the pipeline with this problem, and they will occasion the development of the policy...;"

mulgated until later. In relation to the January 30, 1981 date of the determination contested here, the department admits that reviewability policy with respect to the addition of a health service was not placed in express format until a Certificate of Need Memorandum was created under date of May 21, 1981 for dissemination to interested persons. The hospital cites 12 Pa. B. 962 (1982), issued March 13, 1982, as the earliest published reference to that memorandum.

In any event, there were no administrative regulations or published criteria to detail in advance the department's application of the Act's requirement that a certificate of need be obtained with respect to certain cases involving the "addition of a health service." The parties agree that, at the time of the hearing here, the federal dollar threshold of operating expenses, above which the addition of a health service was to be considered reviewable, was $82,200.[6] However, an arguable need for administrative detailing of the statutory requirement can be perceived by noting the broadness of the other determinative elements expressed in the key subsection of the Act on which the

---

— if the use of flexible indicators "were not the case, we would have to publish these kind of things in a regulatory form, which would tie our hands and tie the hands of the applicant and require us to consider every institution like every other one. Every institution is not like every other one...;" and

— the department "had intended to publish these as policies in the Pennsylvania Bulletin, saying these are policies not regulations, but they began to charge us for publishing them ... the notices are published ... that there are policies developed."

As noted in the text, we have no evidence of publication of any such notice affecting this case, at least before the March 13, 1982 notice in 12 Pa. B. 962 (1982).

[6] As amended effective October 1, 1981, 42 U.S.C. §300n(5)(B), the threshold dollar amount is $250,000.

department must rely, Section 701(a)(4), 35 P.S. §448.701(a)(4), which reads:

> (4) The *addition* of a *health service* ... having an *operating expense* in excess of the minimum annual operating expense established [by federal law], and which were not offered on a *regular basis* ... within the twelve-month period prior... [Emphasis added.]

When is a health service to be considered new, *i.e.*, an "addition," as distinguished from one considered to be pre-existing because it has been offered on a "regular" basis, and what degree of establishment constitutes regularity? What cost elements make up "operating expense" counted toward the threshold? For example, are salaries of existing staff counted if reassigned? Must only the new service function be added, or must operating expense attributable to it be an "addition" to the total hospital budget? Indeed, what is the meaning of a rehabilitative "health service" in a case such as this, noting that the so-called definition in the Act's Section 103, 35 P.S. §448.103, rather circularly defines health services merely as "Clinically related (*I.E.*, diagnostic, treatment or rehabilitative) services, including alcohol, drug abuse and mental health services."

Therefore, in view of the very general nature of the concepts in the pivotal Section 701(a)(4) here, and the legislative concern that implementing administrative regulations be issued, we should heed the constitutional doctrine of *State Board of Pharmacy v. Cohen*, 448 Pa. 189, 292 A.2d 277 (1972), in which the Pennsylvania Supreme Court (dealing with implementation of the statutory concept of "unprofessional conduct" as to pharmacists) held that due process concerns provide the basis for statutory requirements drawn in order to provide "advance clear

notice of what is prohibited conduct," 448 Pa. at 200, 292 A.2d at 282, and declared that

> [n]either the legislatively chosen agency ... nor the courts may imagine rules or standards for conduct not properly adopted or announced in advance....

and that

> [t]he exercise of the Board's power on a case by case basis not based on statute or rule suffers from constitutional infirmities of vagueness.

448 Pa. at 200-01, 292 A.2d at 282-3. With approval, the Pennsylvania Supreme Court quoted K. Davis, A New Approach to Delegation, 36 U. Chi. L. Rev. 713 (1969), stating that:

> "[T]he protections should grow beyond the non-delegation doctrine to a much broader requirement, judicially enforced, that as far as is practicable administrators ... must confine and guide their discretionary powers through standards, principles and rules."

448 Pa. at 202-3, n. 14, 292 A.2d at 284, n. 14.

Subsequently, in 1 K. Davis, Administrative Law Treatise, 181-2 (2d Ed. 1979) the *State Board of Pharmacy* case is cited in connection with the statement that:

> The void for vagueness idea combines with the nondelegation doctrine to push the courts toward judicial requirement of administrative rulemaking.... The court may permit the agency to do its rulemaking under the vague statutory standard, but the court may forbid the agency to make individual determinations without first doing what it reasonably can do, by rulemaking or otherwise, to give specific meaning to the vague statutory standard.

This court, not in a constitutional context but from the standpoint of the Commonwealth Documents Law,

Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1101-1208, reflecting like principles, has held that an internal agency memorandum, interpreting federal law, could not provide a lawful basis for a state agency's determination of eligibility. *Elkin v. Department of Public Welfare*, 53 Pa. Commonwealth Ct. 554, 419 A.2d 202 (1980). And in *Newport Homes v. Kassab*, 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975), under the Commonwealth Documents Law, we invalidated an internal policy directive as insufficient for justifying administrative action.[7]

Thus, the courts, as well as the legislature in this very Act, have solidly established the importance of the hospital's right to have the *reviewability* — as well as the merits, see Section 601(e) above — of its proposal determined pursuant to lawful, uniform criteria published in advance, not devised ad hoc. Obviously, if we fail to correct the board and leave the hospital's proposal now to be examined by the department for approval or disapproval, that important right of the hospital to have reviewability — *i.e.*, coverage versus exemption — decided under lawful criteria will have been forever bypassed because the claimed right is the right to be free from that selfsame examination for approval or disapproval.

We should reverse the board and vacate the department's reviewability determination.

---

[7] *Redmond v. Milk Marketing Board*, 26 Pa. Commonwealth Ct. 368, 363 A.2d 840 (1976), on which the board in this case relied to uphold the adequacy of the department's basis for its determination, is not controlling. *Redmond* merely held that an area milk price revision was an adjudication and therefore not required to be embodied in regulation form; in the present case, the hospital is not claiming that the department's determination should be promulgated as a regulation, but rather that the departmental policy leading to that determination should not have been entirely internal and unarticulated.