I. Marvin Miller, individually and as a Licensed Real Estate Broker, and the Pennsylvania Association of Realtors, Petitioners *v.* Commonwealth of Pennsylvania, Department of Banking and Great Valley Savings Association, Respondents.

Argued September 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, BARRY and COLINS.

*Thomas D. Caldwell, Jr., Caldwell, Clouser & Kearns,* for petitioners.

*Paul A. Adams,* with him, *Carl F. Mogel,* for respondents.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 15, 1985:

The Pennsylvania Association of Realtors appeals an order of the Secretary of Banking dismissing its administrative complaint.[1] We reverse and remand.

The Association's complaint challenged the validity of the Department of Banking actions approving the requests of six savings and loan service corporations to engage in third-party real estate brokerage.[2] These authorizations occurred after the Department's Savings Association Bureau decided that it would be in the public interest to permit third-party brokerage by qualified service corporations. The approvals in

---

[1] The Secretary's order also dismissed I. Marvin Miller as a party for lack of standing. Although Miller did not appeal this part of the order, his name still appeared as a party in the various filings with this Court. To avoid confusion, we have retained his name in the caption to this opinion and order.

[2] In granting these requests, the specific wording of the Department's approval letters either empowered the service corporations to employ *licensed* real estate brokers or authorized third-party brokerage *subject to compliance with the Real Estate Licensing Act and the rules and regulations of the State Real Estate Commission.*

dispute were granted through an individual application process, pursuant to a Department regulation providing for case-by-case authorization of service corporation activity.[3]

Our scope of review of the Secretary's decision is limited. We must uphold his order unless it is in violation of constitutional rights, not in accordance with the law, or a necessary finding of fact is not supported by substantial evidence. Section 704 of the Administrative Agency Law.[4]

In this appeal, the Association initially claims that the Secretary committed an error of law in concluding that the decision to authorize third-party brokerage by qualified service corporations was not a regulation which required promulgation as provided in the statute formerly known as the "Commonwealth Documents Law."[5]

The Association reasons that since the decision to permit third-party brokerage by suitable applicants applies to future activity and has the potential of affecting service corporations generally, it is not an individual adjudication. This argument erroneously assumes that a Department pronouncement is subject to but two characterizations: an adjudication or a regulation. However, an administrative agency may also adopt a *general policy* to be applied in *future adjudications*. *Pennsylvania Human Relations Commission v. Norristown Area School District*, 473 Pa.

---

[3] 10 Pa. Code §37.5. This regulation provides that a service corporation may engage in activities beyond those generally permitted under 10 Pa. Code §37.1 "if the purpose of such additional activities is authorized . . . by the Federal Home Loan Bank Board and the Department together, or authorized solely by the Department."

[4] 2 Pa. C. S. §704.

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602.

334, 374 A.2d 671 (1977). This is precisely what the Department did here. It decided to authorize third-party brokerage by qualified service corporations *as and when they applied for authorization of brokerage activity*. In short, it approved the *right to apply;* it did not authorize blanket brokerage activity *as of right*. We therefore hold that the Secretary correctly concluded that the Department's general policy decision need not be promulgated. *Norristown Area School District*.

The Association next attacks the Secretary's legal conclusion that a specific regulation on the third-party brokerage practice is not required.

The Secretary has not erred. Section 922(n) of the Savings Association Code[6] states that "the department shall have the right to define service corporations and the activities thereof." Nothing in this provision requires that the varied activities of service corporations be defined solely by regulation. Moreover, in our view, the legislation's intent is that the Department exercise its administrative discretion in providing flexibility and ready response to economic changes which affect the viability of savings and loan associations.[7] When the Federal Home Loan Bank Board announced that it would consider applications for third-party brokerage by federal savings and loan associations,[8] the Department in the prudent ex-

[6] Act of December 14, 1967, P.L. 746, *as amended,* 7 P.S. §6020-162(n).

[7] *See* Section 103(a)(8), 7 P.S. §6020-3(a)(8).

[8] 46 Fed. Reg. 24,529 (1981). Also, several states—including Maryland, New Jersey, and Ohio—have authorized third-party real estate brokerage by their service corporations either through regulation or application. Supplemental Brief of the Department of Banking at 4. We note that Section 103(a)(5) of the Code, 7 P.S. §6020-3(a)(5), states that one of the legislature's purposes was "to provide . . . [t]he opportunity for associations subject to this act

ercise of this discretion chose to move cautiously. Rather than to allow all service corporations to indiscriminately engage in third-party brokerage, it opted to grant authorizations on a selective, case-by-case basis. Because the legislators left this determination to the Department, we will not disturb it. *See Budzinski v. Department of Public Welfare,* 39 Pa. Commonwealth Ct. 176, 394 A.2d 1333 (1978).

Finally, the Association argues that the Secretary erroneously concluded that the Department correctly adjudicated the service corporations' applications on a case-by-case basis.

The record discloses that the Secretary found that ''there does not appear to have been a review of each applicant's financial status and regulatory status before issuance of approvals to an association for a service corporation to engage in third party brokerage.''[9] From this finding, we must reach the inescapable conclusion that the applications were not adjudicated on a case-by-case basis. The Department's stated purpose of the adjudicatory process was to sift out those unqualified service corporations. At a minimum, therefore, the Department should have investigated each institution's financial and regulatory records prior to granting approval for third-party brokerage service. The Department not having done this, its authorizations to the six service corporations

_____

to remain competitive . . . with savings and financial organizations existing under the laws of other states [and] the United States. . . .'' In light of this and the recent trend toward third-party brokerage by competing savings and loan service corporations, the Department has the statutory mandate to permit third-party brokerage by Pennsylvania service corporations.

[9] *Report of Recommended Decision by Hearing Officer Robert C. Spitzer to the Secretary of Banking,* No. 82-001, at 14, as adopted by order of the Secretary dated May 4, 1983.

are void and without legal effect. We must therefore hold that the Secretary erred in his conclusion that the requests were properly adjudicated on a case-by-case basis.

We approve of the Department's decision to authorize third-party brokerage through individual applications. However, we reverse the Secretary's order, due to the Department's failure to conduct proper adjudications, and remand the case to the Department for further proceedings consistent with this opinion.

ORDER

The order of the Secretary of Banking, No. 82-001, dated May 4, 1983, is reversed and this case is remanded to the Department for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

Judge WILLIAMS, JR., dissents.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.

———

CONCURRING AND DISSENTING OPINION BY JUDGE CRAIG:

I concur with the court's reversal of the decision of the Secretary of the Department of Banking; however, because I conclude that the Department cannot define and authorize additional permissible activities for savings and loan service corporations without the valid promulgation of regulations, I cannot concur with the majority's remand for "proper adjudications."

As the majority notes, the legislative grant of authority enabling the Department to define service corporations and their activities is in general terms. Sec-

tion 922(n) of the Savings Association Code, Act of December 14, 1967, P.L. 746, *as amended,* 7 P.S. §6020-162(n). The Department exercised that authority in 10 Pa. Code §37.1, listing quite specifically the activities of service corporations deemed to be permissible at that point:

[T]he activities of a service corporation shall consist of originating, purchasing, selling and servicing loans upon real estate and participating interests therein, or performing clerical, bookkeeping, accounting, statistical, or similar functions primarily for associations and Federal savings and loan associations.

Notably, the regulation does not mention third party brokerage as a permissible activity. However, the majority concludes that the Department may also now proceed to define permissible activities by individual adjudications, citing only *Budzinski v. Department of Public Welfare,* 39 Pa. Commonwealth Ct. 176, 394 A.2d 1333 (1978). Although *Budzinski* did reiterate general language to the effect that administrative agencies have wide discretion in the discharge of their duties, it did not involve an agency pursuing its legislative mandate on a case-by-case basis; rather, the petitioner there challenged a decision which the agency had reached by relying on its duly promulgated regulations.

Our Supreme Court has declared, albeit in a constitutional context, that an administrative agency should pursue its definition and interpretation of statutory provisions "by means of [its] statutorily granted rule-making powers. . . ." *Pennsylvania State Board of Pharmacy v. Cohen,* 448 Pa. 189, 198, 292 A.2d 277, 281-82 (1972).

The Supreme Court specifically rejected the Pharmacy Board's cotention that its legislative authority

to "regulate the practice of pharmacy" empowered it to proceed on an ad hoc basis, stating that:

Neither the legislatively chosen agency, here the Board, nor the courts may imagine rules or standards for conduct not properly adopted and announced in advance. To hold otherwise is to substitute for either statute or rule a purely subjective criterion which may reflect merely the personal or professional views of individual members of the Board.

448 Pa. at 200, 292 A.2d at 282.

In his Administrative Law Treatise, Kenneth C. Davis cites the *State Board of Pharmacy* case in his discussion of judicially mandated administrative rule-making, observing that:

The court may permit the agency to do its rulemaking under the vague statutory standard, but the court may forbid the agency to make individual determinations without first doing what it reasonably can do, by rulemaking or otherwise, to give specific meaning to the vague statutory standard.

1 K. Davis, Administrative Law Treatise §3:9 (2d ed. 1978).

After the *State Board of Pharmacy* case, this court invalidated agency actions because they were not grounded on regulations duly promulgated under the act formerly known as the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1101-1602.

In *Newport Homes, Inc. v. Kassab*, 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975), this court concluded that an agency's "final directive" represented an internal policy codifying the agency's statutorily granted discretion. The court reasoned that the di-

rective's general applicability and future effect placed it precisely within the statutory definition of a regulation, and therefore, the agency's failure to comply with the procedures for the promulgation of regulations rendered its directive a nullity.

Similarly, in *Elkin v. Department of Public Welfare,* 53 Pa. Commonwealth Ct. 554, 419 A.2d 202 (1980), the court determined that an unpublished internal agency memorandum interpreting federal law was a ''regulation'' under the Commonwealth Documents Law, and because the memorandum had not been properly promulgated, it could not provide a lawful basis for the agency's determination.

The facts in the present case bring it squarely in line with our earlier decisions. The Department had initially announced the permitted activities for service corporations by valid regulation; its subsequent decision to augment that list by adding third party brokerage was the same kind of action, requiring the promulgation of regulations.

The parties agree that the Department had made a decision that it would permit third party brokerage before any service corporation filed an application. The majority characterizes that decision as a ''general policy,'' relying on *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977).

In the *Human Relations Commission* case, this court recognized the difficulty of distinguishing a general policy statement from a regulation and concluded that the commission's ''guidelines'' and ''recommended elements'' for public school desegregation were policy statements and thus did not require promulgation. In reaching its decision, the court considered the ''language and form of the guidelines as well as the Commission's characterization and

586

treatment'' of them. *Pennsylvania Human Relations Commission,* 473 Pa. at 347, 374 A.2d at 678.

Because the Department did not express its advance decision in writing, we do not have its ''language or form'' to aid our interpretation; however, the Department's treatment of that decision is instructive.

The evidence indicates that the Department received six applications from service corporations seeking approval of third party brokerage activities. The Department approved each of those applications with out giving individual attention to the applicant's financial standing or regulatory status, as the Secretary's opinion acknowledged. Indeed, the process was so perfunctory that one service corporation received approval before it had made a formal application, apparently on the strength of an oral request.

The Department's actions here were far more than mere inartful attempts at adjudications under a general policy; its summary approach to the implementation of its decision compels the conclusion that the Department has been giving ad hoc approval to service corporations' applications pursuant to a new and significant—but undefined—course of action, adding third party brokerage to the scope of permissible activities.

The danger of ad hoc approval actions is that they are susceptible to a lack of uniformity and possible discrimination.

Hence, I concur with the reversal of the Secretary's decision and dissent from the majority only to the extent that the order of court remands the case for further administrative proceedings without the promulgation of regulations.

Judge BARRY joins in this concurring and dissenting opinion.