**GIANT FOOD STORES, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 1998.

Decided June 11, 1998.

**178**

Jeffrey F. Champagne, Harrisburg, for petitioner.

Lesa E. Tressler, Harrisburg, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Giant Food Stores, Inc., appeals an order of a Hearing Examiner who affirmed a decision of the Department of Heath, Division of Special Food Programs, refusing to recertify Giant as an authorized retailer in the Special Supplemental Food Program for Women, Infants and Children (WIC Program).[1]

Giant owns a supermarket, known as Giant Food Store # 72, in State College, Pennsylvania, which had been certified by the Department as a WIC vendor. The WIC Program certification for Store # 72 was scheduled to expire and, in January of 1997, Giant submitted an application to the Department to be recertified as a WIC vendor.[2] Thereafter, the Department notified Giant that it would conduct an inspection of Store # 72 on March 12, 1997. The Department did inspect Store # 72 on March 12, 1997, and the inspection included an examination of Giant's inventory of infant formula, cheese, milk, juice, certain vegetables, and breakfast cereal. The inspector discovered two outdated one-half gallon containers of skim milk among the cartons of milk on display. The containers were marked with an expiration date of March 11, 1997, making them out of date by one day.

1. The WIC Program is a federal program designed to provide food supplements to low income women and children. Federal regulations governing the WIC Program are found at 7 C.F.R. §§ 246.1–246.28, and the administration of the program is delegated to the states.

2. Stores are recertified every two years, and must meet fourteen "Selection and Limitation Criteria" including the requirement that "[s]tores will not have stale-dated, WIC authorized foods ... on their shelves." (WIC Retail Store Handbook (Handbook) at 3, Reproduced Record (R.R.) at 53a.) The Handbook expressly warns applicants that "[f]ailure of the store to meet **any** of the selection and limitation criteria at the time the [inspection] is conducted **shall serve as a basis for denying certification or recertification to the store.**" (Handbook at 3–4; R.R. at 53a–54a.) (Emphasis added.) When the Department rejects an application, the store must wait six months from the date of the Department's disapproval to file a new application for certification. (Handbook at 3; R.R. at 53a.)

By letter dated June 18, 1997, the Department informed Giant that Store # 72 would not be recertified as a WIC vendor, because "there [was] evidence of stale-dated foods or formula" discovered during the inspection. (Recertification Disapproval Notice at 1; R.R. at 93a.) Giant appealed the Department's decision to the hearing examiner, who conducted a hearing on August 7, 1997.

After the hearing, the Hearing Examiner found as fact that Giant had two outdated one-half gallon containers of skim milk in its shelf inventory. The hearing examiner recognized that the Handbook states that part of the "selection criteria" considered during recertification is that stores "will not have stale-date foods or formula on their shelves." (Handbook at 3; R.R. at 53a.) The examiner concluded that, based solely on the two outdated cartons of milk, the Department properly denied Giant's application for recertification under the terms of the Handbook, reasoning as follows:

> The Market had on its shelves two half gallons of skim milk dated March 11, 1997, on March 12, 1997. The Department denied recertification because of the out dated milk. Market knew the date of the inspection. There should have been no out dated milk in the store, let alone on the shelves. Market argues that it was only two half gallons out of the whole store. They say that it is de minimus and that the penalty outweighs the violation. The Department on the other hand argues that the line has to be drawn somewhere. Should it allow five cartons of bad milk? To a recipient one bad carton of milk is too many.
>
> . . . .

... Under the new Handbook, there is clearly a right to deny certification for failure to meet the criteria established. There is no de minimus argument when you are dealing with outdated food and nursing mothers and infants on formula. One cannot draw a line of some outdated food or not too much, or how outdated it needs to be to qualify. Recertification tests the vendor's seriousness as well as its qualifications. If Market is unable to avoid having stale dated milk on its shelves, being found on a spot check, during an announced inspection then it cannot be taking the program seriously. . . .

(Hearing Examiner's decision at 3–4; R.R. at 111a–12a.) This appeal followed.[3]

On appeal, Giant contends that (1) the Handbook is not a binding regulation and cannot, as a matter of law, be the basis of the Department's decision, (2) the Department's distinction between the denial of recertification and a sanction for infractions discovered during other types of inspections is arbitrary, capricious, and contrary to law,[4] and (3) the Department's decision is contrary to federal regulations governing the WIC program.

Giant first argues that the Handbook is not a law and that the hearing examiner erred in treating the provisions in that document as binding rules. It argues that the Department has never promulgated regulations governing the WIC Program, and that the Handbook was never issued in accordance with what is commonly known as the Commonwealth Documents Law (CDL),[5] and other statutes governing the promulgation of regulations.[6] Hence, the terms of the Handbook are invalid. We must agree.

3. The decertification of Store # 72 was scheduled by the Department to take place on October 6, 1997. However, we granted a supersedeas on October 2, 1997, under which Store # 72 continues to be a WIC vendor.

4. The Handbook contains separate provisions for inspections and sanctions of stores that are already certified as WIC program vendors. The Department conducts occasional announced and unannounced inspections of WIC vendors and, if a violation is discovered, the store is expected to take corrective action within a given time period; sanctions may be imposed if the violation is "severe enough to warrant them." (Handbook

at 14; R.R. at 64a) The failure to maintain foods according to their expiration dates is a violation subject to sanctions. (Handbook at 15; R.R. at 65a.) Sanctions include warning letters or disqualification from the program. (*Id.*)

5. Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102–1602.

6. Giant also cites to the Regulatory Review Act, Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–.15, and the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, 71 P.S. §§ 732–101 to 732–506. The Regulatory Review Act establishes a procedure for the Gen-

The CDL establishes a process for issuing regulations that includes public notice of a proposed rule, receiving comments from interested parties, and holding hearings when appropriate. Under Section 102 of the CDL, a "regulation" is defined as "any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to the agency." 45 P.S. § 1102. On the other hand, an interpretive rule, referred to in Section 102 of the CDL as a "statement of policy," is one that tracks a statute and does not expand upon its plain meaning; such a rule need not be issued in accord with the CDL. *Jay R. Reynolds v. Department of Labor and Industry, Prevailing Wage Appeals Board,* 661 A.2d 494 (Pa.Cmwlth.1995); *Department of Transportation, Bureau of Traffic Safety v. Byrd,* 41 Pa.Cmwlth. 38, 399 A.2d 425 (1979).

The distinction between regulations and statements of policy is that regulations establish binding norms having the force of law. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977). In contrast, statements of policy are announcements to the public of general policies that the agency may implement in the future, and when a policy is applied by an agency in a particular situation, it must be prepared to support the policy just as if the statement was never issued. *Id.* Further,

> '[b]inding norm' means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation. Additionally, in determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not to follow the announced policy in an individual case.

*Department of Environmental Resources v. Rushton Mining Co.,* 139 Pa.Cmwlth. 648, 591 A.2d 1168, 1173, *petition for allowance of*

eral Assembly to review regulations supplementing statutes which it enacted. The Commonwealth Attorneys Act provides that the Attorney

*appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991).

In the instant case, while the Handbook states that it is an "informational guide for WIC retail stores," it is clear from the record that the Department viewed the terms of the Handbook as binding norms that governed its relationship with Giant, and that the Department and Hearing Examiner ministerially applied those rules to resolve this dispute. The Department's decision to deny Giant's application for recertification was based solely on its failure to strictly satisfy the "selection and limitation" criteria in the Handbook. The Handbook does not give any discretion at all to the Department to recertify a store that does not absolutely meet **all** of the selection and limitation criteria. The Handbook states that, when a vendor fails to meet all the requirements for recertification at the time of inspection, the vendor is disqualified from the WIC Program; the Department does not have the option to provide vendors with warnings or opportunities to correct problems uncovered during a recertification inspection. The only exception to denial of recertification is a consumer hardship exception, applicable only in circumstances where there are no other qualified stores within a certain geographic area, and that exception is not included as part of the Handbook.

In addition, we note that the selection and limitation criteria in the Handbook were developed by the Department based on an express grant of authority by the federal government, and are not contained in the Code of Federal Regulations. The federal regulations provide as follows:

> The State agency shall conduct a periodic review of all authorized food vendors under its jurisdiction, at least once every two years. **The State agency shall establish criteria used to assess the adequacy of all food vendor qualifications.** Based upon the results of such reviews the State agency **shall make appropriate adjustments among the participating food vendors, such as termination of agreements.**

General shall review proposed regulations for form and legality.

7 C.F.R. § 246.12(g) (emphasis added). Following the above, the Department promulgated standards for determining which WIC food vendors are qualified to hold that status and rules for dealing with vendors who do not satisfy those standards. In a situation like this one, where the federal government delegates authority to a Commonwealth agency to establish standards for the use of federal money, a rule based on that delegation of authority is a regulation. *Elkin v. Department of Public Welfare,* 53 Pa. Cmwlth. 554, 419 A.2d 202 (1980).

Therefore, for all the above reasons, we hold that the provisions in the Handbook are, in fact, regulations that had to be promulgated in accord with the CDL.[7]

The Department admits that the Handbook was not promulgated under the CDL. When the CDL is applicable, regulations issued without following the procedures contained in that statute are invalid and unenforceable. *Elkin.* Therefore, we hold that the terms of the Handbook are not binding rules and that the Department and Hearing Examiner erred in relying on the Handbook as a basis to deny Giant's application for recertification.

■ The Department, however, argues that the provisions of the Handbook, including vendor selection criteria, are approved each year by the United States Department of Agriculture as part of the Commonwealth's "State Plan," a document which describes how the Commonwealth intends to implement and operate the WIC program. 7 C.F.R. § 246.2. The Department asserts that, because it is required to seek federal approval of the State Plan, it need not promulgate the Handbook in accord with the CDL. We cannot agree.

First, the Handbook was drafted by the Department and is thus the product of a Commonwealth agency, and not the federal government. Hence, we believe that the Department must comply with the Commonwealth's rulemaking procedure, regardless of the federal approval process. Second, in *Elkin,* the Department asserted that a regulation controlling the disbursement of federal monies for day care programs was per se reasonable, because it was approved by the federal Department of Health, Education, and Welfare as part of its "Annual Plan," as required by the Code of Federal Regulations. We rejected that argument, concluding that the federal approval of the Annual Plan did not demonstrate that the regulation was reasonable and valid, since the federal review procedure did not permit this Court to determine the reasonableness of the regulation as applied to unforeseeable factual situations.

Also, the Department argues that the Handbook reflects business-type decisions not subject to the rulemaking provisions of the CDL, citing *Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 432 A.2d 1375 (1981). In *Independent State Store Union,* our Supreme Court held that the business-type decisions essential to managing retail liquor stores are a unique form of governmental activity, which are not subject to the CDL. The Court recognized that decisions involving the pricing of merchandise, what products to sell, and marketing strategies are not amenable to the normal public participation process.

Contrary to the Department's argument, the unique facts in *Independent State Store Union* are not present in this case. The Supreme Court in *Independent State Store Union,* recognizing that the Commonwealth was essentially running a retail liquor business, acted to prevent the regulatory process from being used as means to micromanage those liquor stores. In contrast, the present case involves Department rules for determining whether a vendor is qualified to be part

7. We note that, because of our holding that the CDL applies here, we further conclude that the Handbook should have been submitted to the Attorney General pursuant to Section 204 of the Commonwealth Attorney's Act, 71 P.S. § 732–204.

However, we do not believe that the Regulatory Review Act applies to the Handbook, because the Handbook is based on federal law and, thus, outside the scope of that Act. Section 2 of the Regulatory Review Act, 71 P.S. § 745.2, states that the statute is intended to allow the General Assembly to oversee the regulations promulgated under its delegation of authority to the various Commonwealth agencies, commissions, and boards. The General Assembly delegated no authority to the Department regarding the WIC Program.

of the WIC Program and regulations for adjudicating disputes concerning that determination. Although the Department must make certain business-type decisions when selecting a WIC Program vendor, those decisions are simply not the equivalent of the day-to-day management decisions *by the Department* at issue in *Independent State Store Union.* Therefore, this argument must fail.

Accordingly, the Hearing Examiner's order is reversed.[8]

### ORDER

NOW, June 11, 1998, the order of the Hearing Examiner in the above-captioned matter is hereby reversed.

---

8. Because of our disposition of this matter, we need not consider Giant's remaining issues.