Leo J. Willman and Jaden Electric Division of the Farfield Company, Appellants *v.* Children's Hospital of Pittsburgh and Mellon Stuart Company and Allegheny County Hospital Development Authority, Appellees.

Argued February 3, 1983, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Kenneth M. Cushman*, with him *Barbara W. Mather, Eleanor N. Ewing*, and *Stephen E. Bozzo, Pepper, Hamilton & Scheetz*, and *David M. O'Boyle, Wick, Vuono & Lavelle*, for appellants.

*Daniel I. Booker*, with him *Beth A. Frailey, Reed, Smith, Shaw & McClay*, for appellee, Children's Hospital of Pittsburgh.

*Joseph W. Conway, Conway, Meyer & Cambest*, for appellee, Allegheny County Hospital Development Authority.

*John E. Beard, III,* with him *Walter A. Bunt, Jr., Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellee, Melon-Stuart Company.

OPINION BY JUDGE BLATT, May 3, 1983:

The appellants, Leo J. Willman and the Jaden Electric Division of the Farfield Company (Jaden Electric) appeal an order of the Court of Common Pleas of Allegheny County which denied their request for a preliminary injunction. They had sought to enjoin the appellees, Children's Hospital of Pittsburgh (Children's), the Mellon-Stuart Company (Mellon-Stuart), and the Allegheny County Hospital Development Authority (Authority) from refusing to permit them to bid on electrical contracts involved in the construction of new hospital facilities.

The appellees were and are engaged in a project which will provide a new 13-story building and visitors' and service entrances to Children's. The trial court found that the total cost of the project, including construction and financing costs, would be about $74 million dollars and that approximately $54 million of this amount would be provided by the sale of tax-free revenue bonds by the Authority. The financial arrangement hinges upon two leasing agreements entered into and to be entered into between Children's and the Authority. First, Children's has leased its existing structures and the real property upon which the project is being constructed to the Authority and the rent will be the amount of the proceeds of the sale of the Authority's bonds. Second, the Authority will sublease these structures and this property to Children's which will operate the hospital and pay rents sufficient to meet the principal and interest payments of the bonds.

Pursuant to a construction management agreement entered into between Mellon-Stuart and Children's,

the project and all trade or construction contracts were to be managed and executed by Mellon-Stuart.[1]

The trial court found that the bonds issued by the Authority for the project would create no debt or liability to the Commonwealth or any political subdivision thereof and that the sole security and recourse of the bondholders would be the rents to be paid by Children's under the sublease. It consequently refused to issue the injunction requested.

It is clear that the standards of appellate review of a trial court's grant or denial of a preliminary injunction[2] constrain our examination in this matter as follows:

> We do not inquire into the merits of the controversy, but only examine the record to determine if there were any reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. (Emphasis deleted.)

---

[1] Thus, the Authority was not to be a party to any construction contract nor would it have control over the construction.

[2] The requirements for a preliminary injunction have been stated as follows:

> [F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. . . . Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded. . . .

*John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977) (citations omitted).

*Singzon v. Department of Public Welfare,* 496 Pa. 8, 10-11, 436 A.2d 125, 126-27 (1981).

Initially, the appellants argue that the trial court erred in denying them injunctive relief on the basis that they had no likelihood of success on the merits. This conclusion was based on the court's determination that the public competitive bidding requirements of Section 10 of the Municipalities Authorities Act of 1945 (Act)[3] did not apply under the facts presented here because the contracts for the Children's project were inherently private.

Section 10 of the Act, in pertinent part, provides:

All construction, reconstruction, repairs or work of any nature made by any Authority, where the entire cost, value or amount of such construction, reconstruction, repairs or work, including labor and materials, shall exceed two thousand five hundred dollars ($2,500), . . . shall be done only under contract or contracts to be entered into by the Authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided.

The appellants contend that, pursuant to this section, Mellon-Stuart, as manager and bid solicitor, was compelled to permit and consider their bid. It is clear, however, that Mellon-Stuart allowed contractors to bid "by invitation only"[4] and it appears that it did not invite Jaden Electric to bid because it was concerned that Jaden Electric, due to its workload at that time, might not be able to perform at the time desired.[5] We

---

[3] Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §312(A).

[4] The appellees state in their brief that the purpose of the bidding "by invitation only" is to assure that all contractors are qualified and will not later be rejected.

[5] Jaden Electric maintains that it was not invited to bid solely because it operates an "open shop," that Mellon-Stuart requested

are faced, therefore, with the statutory construction of Section 10 of the Act.

The appellees argue that the legislature's use of "made by any Authority" and "to be entered into by the Authority" in this section requires public bidding *only* where the Authority actually undertakes or manages the construction of a project or is a party to a construction contract. They maintain that the Authority is not involved in the construction work nor is it involved in contracting for such work. The appellants argue, on the other hand, that the word "made" in Section 10 of the Act is broad enough to cover the situation where an Authority supplies funds but otherwise divorces itself from all management, supervision and contracting functions.

Our review of the law discloses no cases dealing with Section 10 of the Act on these issues. However, in *Clearfield Area Housing Corp. v. Hughes,* 13 Pa. Commonwealth Ct. 96, 318 A.2d 754 (1974) we construed a similar statutory provision[6] concerning the public bidding requirements under Section 11 of the Housing Authorities Law (Housing Law), Act of May 28, 1937, P.L. 955, *as amended,* 35 P.S. §1551(a). This section provides:

> Whenever the estimated cost of any construction, erection, installation, completion, alteration, repair of, or addition to, any project *subject to the control* of the Authority shall exceed two thousand five hundred dollars . . . it shall be the duty of said Authority to have such

certain information from it which was given, and that it reminded Mellon-Stuart it would have completed the major portion of its work load by the date of the commencement of the project.

[6] It is evident that Section 11 of the Housing Law *infra,* and Section 10 of the Act differ little in substance except that the former requires the project to be "subject to the [Authority's] control" while the latter requires the Authority to have "made" the construction or other work.

work performed pursuant to a contract awarded
to the lowest responsible bidder, after advertisement for bids. (Emphasis added.)
*Clearfield* involved a situation wherein a Housing Authority issued bonds to finance low-income housing
construction. The proceeds of the bonds were paid by
the Housing Authority to a private development corporation as rent under a lease of property from the
corporation to the Authority. The corporation then
entered into construction contracts which were alleged
to be in violation of the public competitive bidding requirements set forth in Section 11 of the Housing Law.
We held, *inter alia,* in dissolving the trial court's injunction, that Section 11 did not apply and would pertain "only to projects to be *constructed* by authorities
created pursuant to the Act of 1937." *Clearfield* at
104, 318 A.2d at 758 (emphasis in original).

We believe, therefore, that if "subject to control"
under Section 11 of the Housing Law can be construed
to mean that an Authority must be involved in the
actual construction of the project, then the legislature's use of the word "made" in Section 10 of the
Act, which is in our opinion more restrictive than
"subject to control", compels us to hold that public
competitive bidding is not required where, as here, the
Authority has not undertaken to manage or construct
the project in question. Additionally, we note that
Section 10 of the Act requires the Authority to be a
party to the construction contract, and here it is not a
party. We are mindful, of course, of the well established rule that courts may not legislate and that we
are limited to the plain and common meaning of a
statutory term.[7] Moreover, we note that the legislature

---

[7] The word "made" is not defined in the Act. Webster's Third
New International Dictionary 1356 (1966) defines "made" as follows: "1a: artificially produced by a manufacturing process . . .
b: artificially produced by excavation, grading or filling. . . ."

could have, but did not, state in Section 10 of the Act that all projects *financed* by an Authority are subject to public competitive bidding requirements. We believe, therefore, that the appellants' remedy, if they have one, lies with the legislature.

The appellants argue next that public competitive bidding is required under the Authority's "General Guidelines for Obtaining Long-Term Financing of Hospital Facilities" (Guidelines) which were adopted on May 12, 1981. Article VI(a) of the Guidelines provides:

Construction Contracts

(a) Competitive Bids: Where construction is initially undertaken by ACHDA [the Authority], ACHDA will take by assignment all plans and specifications for the project and will competitively bid the construction work as required by the Act. However, where it is to the economic advantage of the hospital to proceed in stages with the construction program, ACHDA will participate in such program by permitting the hospital to initially award contracts with subsequent assignments thereof to ACHDA. *All contracts so awarded by the hospital must have been first made the subject of competitive bidding in accordance with the* [Municipal Authorities] *Act.*

Guaranteed maximum contracts properly bonded with construction managers are permissible, provided all sub-contract work done under such guaranteed maximum contracts *is awarded on a competitive basis.* (Emphasis added.)

The appellees counter, however, that the Guidelines are not binding in the way that rules or regulations issued by a governmental body are. In the alternative,

the appellees argue that, even if the Guidelines did apply, only the second paragraph of Articles VI(a) obtains and that they have "awarded [contracts] on a competitive basis" because the bidding was competitive as to and among bidders who received and accepted invitations to bid.

Our Supreme Court has recognized the distinction between guidelines and rules or regulations issued by a governmental body. *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 374 A.2d 671 (1977). It is clear that, where an agency's guidelines are intended to provide a general statement of policy, they will not be treated as binding administrative rules or regulations. *Id.* And, whether or not a guideline constitutes a general statement of policy depends upon "the language and form of the guidelines as well as the Commission's [the Authority in the instant case] treatment of the guidelines." *Id.* at 347, 374 A.2d at 678.

Here we believe that the Guideline in question is a general statement of policy. The record indicates that the Guidelines, which are largely informational,[8] were issued by the Authority to assist (not to regulate) public and nonprofit hospitals in obtaining long-term financing for construction projects. Additionally, we find no evidence of record establishing that the Authority treated the Guidelines as binding regulations or claimed that they had the "force of law." *Id.* at 348, 374 A.2d at 676.[9]

---

[8] The complete title of the Guidelines is as follows: "General Guidelines for Obtaining Long-Term Financing of Hospital Facilities through the Allegheny County Hospital Development Authority under the Municipal Authorities Act of 1945, *as amended.*

[9] Additionally, we note that the second paragraph of Article VI(a) of the Guidelines, which obtains, requires the awarding of contracts "on a competitive basis." It appears that the appellees did award its contract after competitive bidding among invited

We must, therefore, conclude that the trial court had reasonable grounds for denying the appellants' request for injunctive relief *Singzon,* and we will affirm its order.

### ORDER

AND Now, this 3rd day of May, 1983, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

bidders. We do not, therefore, agree with the appellants that, if the Guidelines were found to apply, it is facially clear that this paragraph was violated.