Margaret Harkins, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs November 18, 1982, to Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Janet Parrish,* for petitioner.

*Carol A. Genduso,* Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 13, 1983:

Margaret Harkins (petitioner) appeals from the Final Administrative Action order of the Department of Public Welfare (DPW) denying her Low Income Energy Assistance Program (LIEAP) benefits.

The Low Income Home Energy Assistance Act of 1981 (Act), 42 U.S.C. §§8621, *et seq.,* authorizes grants to states for assistance to eligible low income households to offset the rising costs of home energy that are excessive in relation to household income. "Home energy" is defined within the Act as being any fuel used for heating or cooling in a residential dwelling. 42 U.S.C. §8622(3). In order for a LIEAP benefit payment to be made to a household, that household must be economically at risk for rising costs of home energy.

The federal regulations draw a distinction between "eligibility for assistance" and "eligibility to receive a LIEAP benefit payment." *See* 45 C.F.R. §§260.150(a) and 260.152(a). While a household might be considered eligible for consideration to receive a LIEAP benefit payment because of the level of income in the household, a state need not provide for payment of LIEAP benefits to that household. Congress did not devise strict guidelines for determining whether an applicant is eligible to receive a LIEAP benefit payment. That determination is left to the States. The only requirement prescribed by Congress was that an applicant household be "vulnerable to rising low-income energy costs," *i.e.,* economically at risk for rising costs of home energy.

The petitioner receives a public assistance grant in the amount of $262.00 a month. Pursuant to federal

regulations her income level makes her eligible for consideration to receive assistance. 45 C.F.R. §260.150. She resides in a federally-subsidized "Section 8" housing unit where she pays $39.00 a month for rent, including heat. The petitioner's residence has a heating system which burns gas fuel. However, individually-metered electric burners and blowers are required to power each tenant's heating unit. The petitioner receives a federally-established monthly utility allowance of $25.00, which is intended to meet the cost of electricity. The petitioner is responsible for the payment of all electric charges in excess of her monthly utility allowance of $25.00.

During the period of November, 1980 through March, 1981 the petitioner incurred electric bills which were substantially greater than her monthly utility allowance. Consequently, on December 2, 1980 the petitioner applied to her County Assistance Office (CAO) for LIEAP benefit payments. On the same date, CAO determined that the petitioner was ineligible to receive LIEAP benefit payments because the petitioner was a resident of a federally-subsidized housing unit and paid her rental costs pursuant to a straight-line payment arrangement, i.e., the petitioner's rent was a fixed amount that included heating costs. The CAO concluded that the petitioner was invulnerable to rising home energy costs, and therefore ineligible for LIEAP benefit payments. The petitioner appealed the CAO's decision on February 19, 1981. Initially the petitioner was notified by DPW that she had thirty days from December 2, 1980 (the date of CAO's decision) to appeal. However, on February 27, 1981 DPW sent the petitioner notice of her right to appeal within sixty days. Ultimately, the filing of a March 18, 1981 appeal was considered timely by DPW.[1]

---

[1] The original notice sent to the petitioner which informed her that she was ineligible for LIEAP benefits, also indicated that the

On June 12, 1981 a fair hearing was conducted, and on July 14, 1981 the Office of Hearings and Appeals issued an order affirming the decision of the CAO. The affirmance was based on several findings of fact which the hearing examiner found to be dispositive.

The hearing examiner found that the petitioner lives in a subsidized housing unit wherein her home energy consumption is measured by a straight-line master meter system. Under such a system there is one master meter to measure the energy consumption for a housing unit, and a straight-line payment of twenty-five percent of a person's adjusted net income to cover rental and heating costs. Therefore, the petitioner's entire gas heating bill is paid by the housing authority which manages her apartment building, while her rental costs remain constant. Although the hearing examiner found that the petitioner was responsible for the costs of electricity in excess of her monthly utility allowance, he concluded that the petitioner was neither "vulnerable to rising home energy costs," in the manner contemplated by Congress, nor eligible for LIEAP benefit payments pursuant to the DPW regulations. A Final Administrative Action order issued on July 14, 1981 dismissed the petitioner's appeal and upheld the Office's decision finding the petitioner ineligible to receive LIEAP benefit payments.

---

petitioner had a right to appeal that determination within thirty days of the CAO's decision. The petitioner's February 19, 1981 request for an appeal, being some seventy-nine days after the CAO's decision of December 2, 1980, was untimely. But, on February 27, 1981 the petitioner was notified by DPW that federal regulations afforded persons denied benefit payments under LIEAP a period of sixty days in which to appeal DPW's decision. Accordingly, the petitioner's right to appeal lapsed on February 2, 1981. However, considering that notice informing the petitioner of her right to appeal within sixty days of DPW's decision was not sent until February 27, 1981, DPW gave the petitioner thirty days from February 27, 1981 to take an appeal. Thus, petitioner's March 18, 1981 appeal was timely.

In support of its decisions, the respondent directs our attention to a memorandum issued by the state's Director of LIEAP on January 23, 1981. The memorandum dictates that "vulnerability must apply only to energy costs associated with the fuel actually used to heat the dwellings, and not the attendant costs of powering the heating plant or conduct devices." Furthermore, in anticipating the dispositive issue of this case, the respondent asserts that the federal statute permits DPW to determine an applicant's vulnerability to rising home energy costs on the basis of cost increments associated solely with the primary source of heat energy. Thus, DPW translated Congress' phrase "vulnerable to rising home energy costs" to mean that an increment in the cost of heating fuel must be passed onto the household in order for the household to be considered vulnerable to rising home energy costs; and, where that cost is not passed on to the household, then the household is not vulnerable to rising home energy costs.

The petitioner asserts that she lives in a subsidized housing unit where an individual meter system (not master meter system) is utilized and that her vulnerability to rising home energy costs should have been determined according to a memorandum issued on March 26, 1981 by the Acting Deputy Secretary of the Office of Income Maintenance. Accordingly, petitioner asserts that she established partial vulnerability to rising home energy costs when she presented electric bills which amounted to more than her monthly utility allowance. She further contends that the memorandum issued March 26, 1981 provides the formula by which her partial vulnerability should have been calculated. The petitioner makes this contention for two reasons: (1) she resides in an apartment where individual meter systems are used to measure electricity usage, and (2) she has a monthly utility allowance of $25.00.

The March 26, 1981 memorandum provides a formula by which a certain class of applicants' vulnerability is calculated. That class of applicants consists of subsidized tenants who have a utility allowance and whose home energy consumption is measured by an individual meter system. An individual meter system ties the household directly to the energy vendor. In that situation, an applicant's apartment rental is a fixed percentage of his adjusted net income, and a portion of the remaining income is a utility allowance which is used for the cost of heat and other utilities. Pursuant to the March 26, 1981 memorandum, the aforementioned class of applicants' vulnerability will be determined by taking the monthly utility allowance, multiplied by five, and subtracting that amount from the actual home energy usage for the five winter months: November through March. The applicants' vulnerability will be the difference between total usage and the allowance — or the maximum from the charts — whichever is less.

The formula set down in the memorandum of March 26, 1981 applies where an individual meter system is used and the applicant has a *monthly utility allowance to cover the cost of heating energy and other utilities.* Since the petitioner *pays a fixed rental which includes the costs of necessary heating energy,* she does not fall within the class of applicants to which that memorandum applies. As stated above, the petitioner resides in an apartment building where gas fuel is used to heat the apartment. No matter what the price of gas fuel might become, the petitioner's rental would remain constant. Therefore, notwithstanding the fact that there is an individual meter to measure the amount of electricity used by the petitioner, she is not vulnerable to rising home energy costs associated with gas fuel, the petitioner's primary source of heat.

Our inquiry must focus on whether it is consistent with the federal statute to determine an applicant's vulnerability to rising home energy costs on the basis of cost increments associated solely with the primary source of heat energy. In reviewing an administrative agency's interpretation of its own regulations the Court must resolve two issues. First, the Court must determine whether the interpretation is consistent with the regulation and second, whether the regulation is consistent with the statute under which it was promulgated. *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980). Although the reviewing court makes these determinations, it must keep in mind that if the regulation of an administrative agency is consistent with the statute under which it is promulgated, then the agency's interpretation of its own regulations is entitled to great weight except where the interpretation is plainly erroneous or inconsistent with the regulation. *Barr v. Department of Public Welfare*, 62 Pa. Commonwealth Ct. 211, 435 A.2d 678 (1981).

DPW, the state LIEAP administrating agency, has promulgated regulations governing the disbursement of LIEAP benefits which are set down in its State plan. As evidenced by the memorandum of January 23, 1981 DPW has adopted a policy of not determining vulnerability on the basis of secondary heating costs related to powering the heating unit or conduct devices. The Final Administrative Action order in this case was issued pursuant to the State plan and the above DPW memorandum. DPW incorporates its memoranda into its State plan; thus, the memoranda do not represent interpretations of the State plan, and we are left with one issue. We must determine whether the State plan is consistent with the federal statute under which it was promulgated. *Forbes Health System.*

We hold that the State plan as amplified by the DPW memoranda embodies a viable and consistent scheme by which LIEAP benefit payments are made. Congress gave the states the responsibility of determining an applicant's vulnerability and stated in comments to its own regulations that a state may pay for only one source or multiple sources of energy, and may use the cost of one source of energy as an indicator of the total energy costs for a household. 45 Fed. Reg. 66678 No. 5. Given the flexibility of the federal statute we are hard put to find any inconsistency between DPW's State plan and Congress' intent and purpose for enacting the Low Income Home Energy Assistance Act of 1981.

The State plan and DPW's memorandum of January 23, 1981 provide that all applicants for LIEAP benefit payments must have their eligibility determined on the basis of their vulnerability to rising home energy costs associated solely with their primary heating sources. While DPW's scheme for determining household vulnerability to rising costs of home energy might seem stringent to some, we have no doubt that its scheme is consistent with the purpose for which Congress intended LIEAP benefit payments to be made. Federal regulations prescribe that the State plan must provide LIEAP benefit payments only to meet the rising costs of energy needed to provide heat in residential dwellings. 45 C.F.R. §250.156. DPW's aforementioned scheme provides just that.

Accordingly, we affirm DPW's order.

### ORDER

AND Now, the 13th day of July, 1983, the Final Administrative Action Order of the Department of Public Welfare dated July 14, 1981 is hereby affirmed.