The Honorable David R. Malone State Senator P.O. Box 1048 Fayetteville, Arkansas 72701
Dear Senator Malone:
This is in response to your request for an opinion on the following:
The City of Fayetteville and the University of Arkansas have executed an Interlocal Cooperation Agreement for construction of an arts center. Pursuant to the agreement, a non-profit co[r]poration (the Arts Center Council) has been formed to construct and operate the Arts Center as agent for the City and the University. Must the Arts Center Council comply with competitive bidding statutes applicable to the City of Fayetteville and the University of Arkansas when it contracts for services or materials? Contractors with the Arts Center Council are paid with funds provided by the University through a private grant and funds provided by the City from proceeds of a revenue bond issue.
It is my opinion that the Arts Center Council is not required by law to comply with competitive bidding statutes ordinarily applicable to the City of Fayetteville and the University when it contracts for services and materials.
It must be noted, however, that the Interlocal Cooperation Agreement itself requires that the construction contract be awarded after the receipt of competitive bids. See Art. III of the Interlocal Cooperation Agreement.
Given the fact that the Agreement itself requires competitive bidding prior to the award of the construction contract, the only remaining question for resolution is whether the Council must comply with competitive bidding provisions when it contracts for services or materials unrelated to the construction contract. This question will depend upon whether each individual party to the agreement would have had to comply if it were not accomplishing its purpose through an interlocal agreement. An entity created pursuant to an interlocal agreement, (in this case the Arts Center Council), can exercise only those powers that the political subdivisions or state agencies creating it could exercise. See generally A.C.A. 25-20-104. Additionally, A.C.A.25-20-104(e) provides:
 No agreement made pursuant to this chapter shall relieve any public agency of any obligation or responsibility imposed upon it by law except that, to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, performance may be offered in satisfaction of the obligation or responsibility.
This section, in my opinion, requires an entity created pursuant to an interlocal agreement to comply with "obligations imposed by law" such as competitive bidding requirements, if the public agencies involved would, in the same situation, have to comply. It is my opinion, however, that neither the University of Arkansas, nor the City of Fayetteville would have to comply with competitive bidding requirements in the purchase of services or materials for the Arts Center, which are unrelated to the construction contract.
Let us first discuss the University's obligation to comply with competitive bidding in this instance. Again, we need not consider whether the University would be required to comply with respect to the construction contract, because it has obligated itself to comply in that regard. This fact renders such statutory provisions as A.C.A. 19-4-1405, and 22-9-203, requiring competitive bidding prior to the award of construction contracts, irrelevant to our analysis. Without the necessity of determining the construction question, our analysis will depend in part upon construction of the Arkansas Purchasing Law, A.C.A. 19-11-201 et seq. That law provides in 19-11-228: Unless otherwise authorized by law, all contracts shall be awarded by competitive sealed bidding, pursuant to 19-11-229, which refers to competitive sealed bidding, except as provided in: (1) Section19-11-230, which refers to competitive sealed proposals; (2) Section 19-11-231, which refers to small purchases; (3) Section19-11-232, which refers to proprietary or sole source procurements; (4) Section 19-11-233, which refers to emergency procurements; or (5) Section 19-11-234, which refers to competitive bidding.
The Arkansas Purchasing Law thus requires competitive bidding except in certain circumstances.[1] Section 19-11-207 governs the applicability of the Arkansas Purchasing Law. It provides:
 (a) This subchapter shall apply to every expenditure of public funds by this state, acting through a state agency as defined in 19-11-203, under any contract. . .
The University is a "state agency" as defined in 19-11-203, but in expending private grant monies to construct and operate the Arts Center, it is not expending "public funds". That term is defined at 19-11-203(20) (Supp. 1987) as follows:
 "Public funds" means all state-appropriated and cash funds of state agencies, as defined by applicable law or official ruling. Public funds for purposes of this subchapter shall not include funds administered by, or under the control of, agencies, except public funds. Without necessarily being limited thereto, it does not include grants, donations, research contracts, and revenues derived from self-supporting enterprises which are not operated as a primary function of the agency, no part of which funds are deposited in the State Treasury; (Emphasis added.)
It is thus clear, in my opinion, that the University would not itself have to comply with the competitive bidding requirements of the Arkansas Purchasing Law in the expenditure of these private grant monies. Thus, to this extent, the Arts Center Council does not have to comply either. We must, however, determine whether the University's partner in the interlocal agreement would have to comply with competitive bidding, in order to arrive at a final conclusion with respect to the Council.
Whether the City of Fayetteville would have to comply with competitive bidding requirements in the disbursement of revenue bond proceeds is a question which will entail review of different statutes than those applicable to the University. The Arkansas Purchasing Law is not applicable to cities. See, generally A.C.A.19-11-203 (25). The City of Fayetteville's obligation to award contracts after competitive bidding is found in A.C.A. 14-47-138, the provision applicable to cities with the city manager form of government.[2] That section provides in pertinent part:
 (b) The board, by ordinance, may waive the requirement of competitive bidding in exceptional situations where this procedure is not feasible, but lacking such exceptional situations, the board may not except any particular contract, purchase, or sale from the requirement of competitive bidding. (Emphasis added.)
The determination of whether the City of Fayetteville must comply with the competitive bidding required under this section when it disburses the proceeds of a revenue bond issue will depend in part upon a construction of the language of subsection (a) above. This is apparently a novel question in our state. It appears that subsection (a) requires competitive bidding whenever the city makes a purchase or contract for supplies, materials, or equipment. This would include a purchase by the Arts Center Council, because in making purchases it will act as the agent for the city. See Interlocal Cooperative Agreement, Art. I. The remaining portion of subsection (a), however, speaks in terms of "obligating the city" under services and construction contracts, and requires bidding where the "cost to the city" exceeds a certain sum. This language implies that the bidding requirement was only meant to be applicable to contracts which would involve the expenditure of city revenues. It is my opinion, therefore, that A.C.A. 14-47-138 would, in all likelihood, be construed by a court as requiring competitive bidding on all contracts involving the expenditure of city revenues, and not those contracts which in no way obligate the funds of the city.[3] This conclusion is in conformity with case law on point from other jurisdictions. See e.g. Eastern Missouri Laborers District, et al. v. St. Louis County, (WL #24761) (Mo.App. 1989); Willman v. Children's Hospital of Pittsburgh, 74 Pa. Comm. 67, 459 A.2d 855 (1983); and Wring v. City of Jefferson, 413 S.W.2d 292 (Mo. 1967).
Additionally, reference to the statutory scheme setting out a city's authority to issue revenue bonds such as those involved in financing the Arts Center is helpful. It is my assumption that the bonds issued to support the Arts Center were issued pursuant to the authority granted in A.C.A. 14-164-401, et seq. That subchapter authorizes the issuance of revenue bonds to construct capital improvements such as the Arts Center. See A.C.A.14-164-402(2). Subsection 14-164-403 provides:
 This subchapter shall be construed liberally to effectuate the legislative intent and the purposes of this subchapter as complete and independent authority for the performance of each and every act and thing herein authorized and all powers granted in this subchapter shall be broadly interpreted to effectuate the intent and purposes and not as a limitation of powers.
This language stands as general evidence of the legislature's intent to give cities liberal authority in this issuance and utilization of revenue bonds. The language of 14-164-403, however, does not go as far as that of 14-164-204, covering the issuance of industrial revenue bonds. That subsection provides:
 This subchapter shall be liberally construed to accomplish its intent and purposes and shall be the sole authority required for the accomplishment of its purpose. To this end, it shall not be necessary to comply with general provisions of other laws dealing with public facilities, their acquisition, construction, leasing, encumbering, or disposition. (Emphasis added.)
The language above has been held to except a county from applicable competitive bidding statutes when it leases land left to the county for industrial purposes. Dumas v. Jerry, 257 Ark. 1031,521 S.W.2d 539 (1975). It has also been held that cities involved in industrial revenue bond projects are not required under the language above to pay the prevailing minimum wage otherwise applicable in the construction of public projects. Daniels v. City of Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980).
With the foregoing in mind, it becomes clear that the Arts Center Council is not required to comply with competitive bidding statutes when it contracts for services or materials in the operation of the Arts Center. This conclusion is based entirely on the fact that neither the City of Fayetteville, nor the University would have to comply with the requirements in this particular instance. It must be remembered, however, that the parties have agreed to award the construction contract only after the receipt of competitive bids and this opinion in no way impacts the necessity of competitive bidding for that contract.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] It should be noted that Act 616 of 1989 prohibits the use of competitive bidding for professional services contracts awarded by the State or political subdivisions.
[2] The City of Fayetteville operates under the City Manager from of government. Section 14-58-303, which also requires competitive bidding, applies generally to cities of the first class. Because, however, it speaks in terms of the major council form of government, and is generally less specific to our question that14-47-138, it is my opinion that it should play a subordinate role in our analysis. (a) Before making any purchase of or contract for any supplies, materials, or equipment, and before obligating the city under any contract for the performance of services or for the construction of municipal improvements, where the anticipated cost to the city of the transaction exceeds the maximum amount established by the board of directors under the authority of14-47-120, opportunity for competitive bidding shall be given under such rules and regulations as the board may, by ordinance, prescribe, and the contract shall be consummated only on a bid approved by the city manager and by the board.
[3] Unless, of course, the city ordinance authorizing the issuance of the bonds provides otherwise. See generally, A.C.A. 14-164-405 (Supp. 1987). Even though the bonds issued to fund the Arts Center are not industrial revenue bonds, and therefore A.C.A. 14-164-204 is not applicable, it is still my opinion that in light of the language of 14-164-403, the language of 14-47-138, and relevant case law from other jurisdictions, a city employing the city manager form of government is not required to accept competitive bids before awarding a contract which is to be paid from the proceeds of a revenue bond issue.