**PENNSYLVANIA DEPARTMENT OF HEALTH, Petitioner,**

v.

**NORTH HILLS PASSAVANT HOSPITAL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.
Decided April 10, 1996.

James T. Steele, Jr., Assistant Counsel, for Petitioner.

Seymour J. Schafer, for Allegheny General Hospital, amicus curiae.

Marvin A. Fein, for Respondent.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Pennsylvania Department of Health (Department) petitions for review of the order of the State Health Facility Hearing Board (Board) reversing the decision of the Department and ordering the grant of a certificate of need to North Hills Passavant Hospital (Passavant) for an open heart surgery facility.[1] Two separate matters are involved: an appeal from the Department decision denying Passavant a certificate of need (CON), as well as a petition challenging the reasonableness of the Department's published criteria in the State Health Plan for determining the number of open heart surgeries facilities needed in a region.[2]

As to the CON appeal, Passavant filed an application for a CON in order to establish open heart surgery services.[3] Similar applications were filed by Washington Hospital and The Medical Center of Beaver. All three hospitals are located in Health Service Area Region VI, which consists of ten counties in southwestern Pennsylvania. The Department's Division of Need determined that 11 open heart surgery services were needed in Region VI by utilizing a calculation in the State Health Plan based on the population of Region VI and the adult utilization rate for open heart surgery facilities.[4] With nine programs already existing, two CON's were available for three applicants.

Once the applications were deemed complete, hearings were requested and held by the Department. After separate hearings were held on all three applications, the Department issued its decisions on the CONs wherein the Department's planners stated that all three facilities satisfied the criteria of the Health Care Facilities Act (Act)[5] and met the qualitative requirements of the State Health Plan.[6] However, because eight of the nine existing services were at Pittsburgh hospitals and people in Beaver County and in Washington County had to travel one hour or one-hour-and-a-half, respectively, to reach Pittsburgh hospitals, the Department awarded a CON to both Washington Hospital and The Medical Center in order to provide better accessibility to those people living outside Allegheny County.[7] Accordingly, Passavant's application was denied by the Department and it appealed to the Board.

As to the petition challenging the reasonableness of the criteria applied by the Department in reviewing a CON application for need, it was filed by Passavant after the hospital filed its appeal of the denial of its

1. A brief *amicus curiae* was filed by Allegheny General Hospital in support of the Department's position on appeal.

2. We are cognizant of the Act of February 23, 1996, P.L. ——, (Act No. 10 of 1996, H.B. 272), which, effective June 30, 1996, eliminates the Board and places its review functions in The Health Care Policy Board. The replacement of the Board has no effect on our decision in this case.

3. The CON application also proposed percutaneous transluminal coronary angioplasty services. Such services can only be provided by facilities with open heart surgery services and, therefore, the approval of that part of the application is dependent solely on approval of the open heart surgery program.

4. The utilization rate used in the formula was set in the State Health Plan based on the Department's determination of the annual number of procedures a facility should perform to maintain quality outcomes. Between 1982 and 1991, the utilization rate was 350 for adult open heart procedures and was then raised to 450. (Reproduced Record 680a–684a).

5. Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101–448.904b. The Act was extensively amended in 1992; however, the parties agree the pre-amendment statute applies to this case.

6. Section 707(a) of the Act, 35 P.S. § 448.707(a), provides that before an application for a CON can be approved and issued, it "shall be consistent with the State health plan".

7. The grant of a CON to both The Medical Center and Washington Hospital were the subject of a separate appeal before the Board and before this court. *See North Hills Passavant Hospital v. Department of Health*, —— Pa.Cmwlth. ——, 674 A.2d 742 (1996).

CON application [8] and it requested a hearing before the Board. Although the Petition was initially docketed separately from Passavant's CON appeal, at the prehearing conference, the Board indicated that it would hear the evidence on both the appeal and the Petition in the same proceedings. (*See* R.R. 503a–504a). At the hearings, the Department argued that the Board's review of the Petition objecting to the State Health Plan was limited to, if appropriate, requesting the Department to review its policies.

Based on Passavant's objections to the Department's determination of need under the State Health Plan, the Board remanded for the Department to apply its expertise in determining whether there was a fundamental flaw in the need formula.[9] (R.R. 821a). After hearing Passavant's arguments,[10] the Department refused to adjust the number of CONs available. In a letter to the Board, the Department stated that the State Health Plan formula accurately predicted the total number of open heart surgery facilities need-ed in an area, and that even Passavant's expert witness admitted that fact. (R.R. 934a, relying on the testimony of Dr. Stewart Anderson, R.R. 867a). Even if the formula was inappropriate, the Department stated, it did not have the authority to change it without going through the amendment procedures for the State Health Plan. (R.R. 934a–935a).

■ Disagreeing with the Department's response, the Board reversed and ordered the grant of a CON to Passavant.[11] The Board found, as argued by Passavant, that the formula used by the Department to determine the number of open heart surgery facilities needed in Region VI produced an inaccurate result by attempting to predict the need for adult open heart surgery services but using general population numbers. An inaccurate result is reached, the Board stated, because a formula based on total population underestimates the need for adult open heart surgery services in Region VI because Children's Hospital of Pittsburgh

8. In its prehearing brief to the Board on the CON appeal, Passavant objected to factors of the formula utilized by the Department to predict need. In its responsive prehearing brief, the Department argued that any challenge to the State Health Plan could not be heard by the Board in the context of an appeal to a CON denial but must be heard in a separate Petition under Section 502(a)(2) of the Act, 35 P.S. § 448.502(a)(2), which provides:

(a) The hearing board shall have the powers and its duties shall be:

. . . . .

(2) To hear upon petition objections to published regulations, criteria, or standards of the health systems agency or department as to the policies therein set forth and where appropriate to request the promulgating agency to reconsider such policies.

9. The Department used the formula set forth in the State Health Plan to predict need:

$$\frac{\text{Total Open Heart Surgery Units Needed}}{} = \text{Total Population} \times \frac{\text{Incidence Rate for Total Population}}{\text{Adult Utilization Rate (450 annually)}} \times \frac{\text{Percent Total Pop. Catheterized}}{} \times \frac{\text{Percent Total Pop. Open Heart Surgery}}{}$$

(R.R. 682a).

10. Before the Department, Passavant presented testimony that the need formula would better predict the need for adult open heart surgery facilities if the following components were changed:
 1. Incidence rate for total population (11.47/1000) to incidence rate for adult population (13.30/1000).
 2. Percent of total population incidents catheterized (72%) to percent of adult population incidents catheterized (79.5%).
 3. Percent of total population incidents undergoing open heart surgery (21%) to percent of adult population incidents undergoing open heart surgery (22.6%). (R.R. 885a, 934a).

11. Although the Board's decision was docketed only for Passavant's appeal of its CON denial, the Board apparently considered the petition objecting to the State Health Plan as consolidated with the appeal.

performs exclusively pediatric open heart surgery and because the incidence of pediatric open heart surgery is significantly lower than the incidence of adult open heart surgery.[12] Adopting Passavant's argument, the Board decided that to attain an accurate estimate of need, the Department should have used the adult population rather than total population to determine the values of the factors in the numerator of the formula. The Board held that there is a need for an additional adult open heart surgery service in Region VI, and that Passavant meets all of the requirements of the Act for approval.[13] The Department then filed this appeal.[14]

The Department contends that the Board exceeded its authority under Sections 502(a)(2) and 506(b) of the Act by considering a challenge to the factors of the need formula set forth in the State Health Plan in the context of a CON appeal because it is bound by the provisions of the State Health Plan. It also contends that even if a challenge to the need formula is properly before the Board in the context of the petition objecting to the Department's regulations or criteria, the Board exceeded its authority in Section 506(b) of the Act by determining that the need formula is inaccurate.[15]

Before addressing the issues raised by the Department, we reiterate the view expressed in prior opinions of this court that "[A] more unorthodox, complicated and convoluted appeal process is not imaginable." *Mercy Regional Health System v. Department of Health,* 165 Pa.Cmwlth. 629, 645 A.2d 924,

932 (1994); *IFIDA Health Care Group Ltd. v. Department of Health,* 128 Pa.Cmwlth. 634, 564 A.2d 535, 539 (1989).

I.

The Department contends that the Board exceeded its statutory scope of review in reviewing the CON appeal. Section 502(a) of the Act endows the Board with the power to hear appeals from the Department's decisions on CON applications and to hear petitions objecting to published regulations, criteria or standards of the Department. The caveat to the Board's power to hear petitions objecting to the Department's regulations or criteria is: "and where appropriate to request the promulgating agency to reconsider such policies." Section 502(a)(2) of the Act, 35 P.S. § 448.502(a)(2). Additionally, Section 506(b) of the Act provides:

> The hearing board shall be bound by the duly promulgated regulations of the department and shall give due deference to the expertise of the health systems agencies and the department in reaching their decisions. It shall receive any evidence as to challenges of the authority of the department or the reasonableness of the criteria or regulations used in the review of the application for the sole purpose of creating a record for any subsequent appeal to court.

35 P.S. § 448.506(b). The Department argues that the Board cannot adjudicate a challenge to published regulations or criteria

---

12. Persons under 18 years of age make up approximately 25 percent of the population but are recipients of only 5 percent of the open heart surgery procedures. (Board's March 1, 1995 opinion, Finding of Fact ## 30–31). In additional criteria, the State Health Plan provides that the minimum number of procedures for pediatric open heart surgery is 100 cases annually. (R.R. 686a). The Plan also provides that a pediatric cardiac surgery hospital should provide services for a population with 25,000 live births, which is roughly 2 million persons. (R.R. 685a).

13. Additionally, the Board stated in its decision that when an applicant seeks to establish an open heart surgery service limited to the treatment of adults, "the Department must employ statistics which pertain solely to the adult population in determining need under the formula in Chapter 26." (Board's decision, p. 27).

14. In reviewing an order of the Board regarding a CON application, this court's scope of review is limited to determining whether the findings of fact were supported by substantial evidence and whether the Board committed a constitutional violation or an error of law. *Robert Packer Hospital v. Department of Health,* 158 Pa.Cmwlth. 329, 631 A.2d 813, 814 (1993); Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

15. The Department also contends that the Board erred in concluding that the Department would have awarded Passavant a CON under the amended formula, and that the Board's decision is contrary to public policy. Because of our decisions on the prior contentions, we need not reach these issues.

within a CON appeal because the Act treats them as separate proceedings. We agree. The language of the statute not only provides for separate proceedings, but also provides for radically different treatment of the appeal and the petition; that is, on the CON appeal, the Board is required to adjudicate the issues in compliance with the Administrative Agency Law, *Mercy,* but on the petition, the Board is permitted to, if appropriate, first remand for consideration by the Department and, secondly, take evidence for an appeal to court. The Board initially agreed with this application of the Act,[16] but in its final decision, concluded that the need formula set forth in the State Health Plan is not a regulation which binds the Board. (Board's March 1, 1995 decision, p. 26). The Board misapprehends the nature of the State Health Plan.[17]

Admitting that the adoption of the State Health Plan is not strictly the promulgation of a regulation, the Department contends it is entitled to due deference by the Board and this court. The State Health Plan is provided for by the Act, which requires the Department:

> To research, prepare and after approval of the [Statewide Health Coordinating Council] and the Governor publish triennially a state health plan for the commonwealth based on the various health systems plans.

Section 201(8) of the Act, 35 P.S. § 448.201(8).[18] In addition to internal planning procedures, the Department holds public hearings for comment by those affected by proposed amendments to the State Health Plan. (R.R. 624a).[19]

 This court has previously recognized that the State Health Plan is a combination of both mandatory provisions and directory provisions. *Robert Packer Hospital; Morrisons Cove Home v. Department of Health,* 140 Pa.Cmwlth. 469, 593 A.2d 925 (1991), *petition for allowance of appeal denied,* 529 Pa. 653, 602 A.2d 863 (1992). In regard to the mandatory provisions, the State Health Plan is analogous to the executive order at issue in *National Solid Wastes Management Association v. Casey,* 135 Pa. Cmwlth. 134, 580 A.2d 893 (1990), because it is legislative in nature and is not effective until approved and signed by the Governor. Section 201(8) of the Act, 35 P.S. § 448.201(8). In *National Solid Wastes,* we held that an executive order authorized by statute and intended to implement or supplement that statute has the force of law. *Id.* 580 A.2d at 898 (citing *Pagano v. Pennsylvania State Horse Racing Commission,* 50 Pa. Cmwlth. 499, 413 A.2d 44 (Pa.Cmwlth.1980)). These types of executive orders are characterized as and treated in a fashion similar to

---

**16.** *See* Board's June 9, 1994 decision remanding for the Department to apply its expertise, specifically R.R. 821a.

**17.** The Board also stated that the changes made to the formula are only as to the numerical data used in the calculation and do not constitute a challenge to the reasonableness of the formula itself. The Board's statement seems disingenuous because the changes it would make to the formula redefine certain factors in the numerator, that is, it modifies the factors from total population to adult population. This is not an update of the numbers, i.e., changing the incidence rate for the total population based on accurate data of a change in that number, which the Department has, in the past, changed by issuing a statement of policy. Moreover, the Board's characterization of the formula as having a "fundamental flaw" describes a challenge to the reasonableness of the formula itself rather than an update to the numbers.

**18.** The 1992 amendments to the Act require the Department to revise the plan annually rather

than triennially. Section 201(6) of the Act, *as amended* by section 1 of the Act of December 18, 1992, P.L. 1602, 35 P.S. § 448.201(6). Additionally, the amendments renamed the State Health Plan as the State Health Services Plan and provided a definition of "State health services plan" as follows:

> A document developed by the Department of Health, after consultation with the policy board and approved by the Governor, that is consistent with section 401.3 [35 P.S. § 448.410c], that meets the current and projected needs of the Commonwealth's citizens. The State health services plan shall contain, in part, the standards and criteria against which certificate of need applications are reviewed and upon which decisions are based.

Section 103 of the Act, *as amended* by section 1 of the Act of December 18, 1992, P.L. 1602, 35 P.S. § 448.103.

**19.** Passavant did not comment or raise any of the objections it now raises during the public hearings on the 1991 amendments to the State Health Plan. (R.R. 625a).

departmental regulations. *Id.* Similarly, because it is issued by the Governor, mandatory provisions of the State Health Plan should be treated as regulations which are binding on the Board, Section 506(b) of the Act, 35 P.S. § 448.506(b), and can be challenged only in the same fashion as the Department regulations can be challenged.[20] Therefore, the Board exceeded its authority in addressing Passavant's challenge to the need formula set forth in the State Health Plan in the context of Passavant's CON appeal. Absent the finding that the need formula should be based on adult population numbers which resulted in an additional available CON, the Board had no grounds upon which to reverse the Department's denial of a CON to Passavant.[21]

## II.

■■■ The Department also contends that in the context of Passavant's petition, the Board exceeded its statutory authority because it is limited to accepting evidence as to the challenge to the reasonableness of the criteria or regulation for purposes of creating a record for appeal to this court. Section 506(b) of the Act, 35 P.S. § 448.506(b). Al-

though not consolidating the dockets of Passavant's appeal and its petition objecting to the need formula, the Board treated the two as if they were consolidated and addressed the contentions of both in its decision; we will do the same.[22]

■■■ The Board initially accepted its limited role in reviewing petitions by complying with Section 502(a)(2) of the Act and remanding for the Department to reconsider the need formula. 35 P.S. § 448.502(a)(2). However, after the Department refused to change the formula, the Board issued a decision making findings of fact and conclusions of law on both the appeal of the CON denial and the petition. Although required by this court's decision in *Mercy* to make an independent review of the evidence in the CON appeal, Section 506(b) of the Act restricts the Board's role on petitions challenging the reasonableness of Department regulations to merely "receiv[ing] any evidence as to challenges of the authority of the department or the reasonableness of the criteria or regulations used in the review of the application for the sole purpose of creating a record for any subsequent appeal to court". 35 P.S.

---

20. A "regulation" is defined in the Commonwealth Documents Law, 45 Pa.C.S. § 501, as:

 Any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or relating to such agency. The term includes a proclamation, executive order, executive directive or other similar document promulgated by the Governor.

 A "statement of policy" is any other document promulgated by the agency that is not a regulation. The difference between the two is that a regulation is the exercise of delegated power to make a law and is binding on a reviewing court like a statute, whereas a statement of policy is merely interpretive and not binding on a reviewing court but is persuasive if it tracks the meaning of the statute. *Pennsylvania Human Relations Commission v. Norristown Area School District*, 20 Pa.Cmwlth. 555, 342 A.2d 464 (1975), *affirmed*, 473 Pa. 334, 374 A.2d 671 (1977). Whether an adoption of a policy by an agency is a regulation or a statement of policy is dependent on the agency's treatment of the action and the language and form of the policy. *Willman v. Children's Hospital of Pittsburgh*, 74 Pa.Cmwlth. 67, 459 A.2d 855 (1983), *affirmed*, 505 Pa. 263, 479 A.2d 452 (1984). Therefore,

 because the Department considers the need formula stated in the State Health Plan mandatory, and the language of the State Health Plan states that the "formula is used to estimate need", the formula is a mandatory provision (although subject to stated exceptions in the Plan). (R.R. 682a).

21. As to the parts of the Board's decision strictly addressing the CON appeal holding that an appropriate simultaneous and comparative review was performed by the Department, and that Passavant had waived the issue of whether the applicants could perform the minimum 450 annual procedures, those issues did not provide a basis for reversing the Department's denial of the CON and were not raised in this appeal.

22. The Act does not provide what procedures can be properly utilized for an "appeal" to this court on the petition. We can only assume that the petition for review procedure was intended. Normally, only the party bringing the petition would be appealing the petition to us. However, in light of the Board's action on the petition and the convoluted procedures provided by the Act (*see* comment, *supra*, p. 8), and in the interest of judicial economy, we conclude that the petition is before us.

§ 448.506(b).[23] By considering the CON appeal and the petition together, the Board cannot circumvent the unambiguous language of the Act. By ignoring the Act's mandate, the Board exceeded its authority over the petition by addressing the challenge to the need formula and in ordering the Department to calculate need based on adult population, and we reverse.

## III.

 Our review, however, is not complete based on our reversal of the Board for exceeding its statutory authority because Section 506(b) states that the evidence received by the Board on the challenge to the reasonableness of the criteria or regulations is to be decided by this court based upon the record made before the Board, apparently *de novo*.[24]

 In deciding whether the regulation is valid, we must examine whether it is within the granted power of the statute, issued pursuant to proper procedures, and reasonable. *Central Dauphin School District v. Commonwealth, Department of Education,* 147 Pa.Cmwlth. 426, 608 A.2d 576 (1992); *Consulting Engineers Council of Pennsylvania v. Commonwealth, State Architects Licensure Board,* 121 Pa.Cmwlth. 595, 551 A.2d 380 (1988), *affirmed,* 522 Pa. 204, 560 A.2d 1375 (1989); *Elkin v. Commonwealth, Department of Public Welfare,* 53 Pa.Cmwlth. 554, 419 A.2d 202 (1980). Regulations are presumed valid and reasonable and we will not substitute the court's judgment for that of the agency unless a clear abuse of discretion is shown. *Hospital Association of Pennsylvania v. Foster,* 157 Pa.Cmwlth. 363, 629 A.2d 1055 (1993); *Paratransit Association of Delaware Valley, Inc. v. Yerusalim,* 114 Pa.Cmwlth. 279, 538 A.2d 651 (1988).

 Because Passavant did not contend that the State Health Plan is not within

the legislative power granted by the Act or that it was not issued pursuant to proper procedures, the only question before us is whether the need formula set forth in the State Health Plan is reasonable. In order to determine the reasonableness or unreasonableness of a regulation, we consider whether the practical application of the regulation is consistent with the express goals of the statute delegating the authority to create a legislative regulation, *Elkin,* 419 A.2d at 205, and whether there was factual support or a foundation for the adoption of the regulation, *Paratransit Ass'n.,* 538 A.2d at 654. *See also Pennsylvania Retailers' Association, Reliable, Inc. v. Lazin,* 57 Pa.Cmwlth. 232, 426 A.2d 712, 719 and n. 7 (1981).[25]

The Department's evidence was that the need formula set forth in the State Health Plan states the minimum set of considerations in the determination of need. (R.R. 681a). The need formula, originally developed in the early 1980's as part of the total State Health Plan adopted in 1983, was intended to predict total need for open heart surgery facilities. (Testimony of William C. Dethlefs, Director of the Division of Planning and Technical Assistance, R.R. 568a–569a). For the 1991 amendments to the State Health Plan, the Department considered having a separate formula for pediatric and adult facilities, but determined that the data was unreliable and the process too complex. (R.R. 603a–604a, 612a). Instead, the Department tested the formula and determined that it accurately predicted the total number of open heart surgery facilities needed without separating pediatric facilities, and that the need of children for open heart surgery was satisfied within the calculation of total need. (R.R. 604a, 612a). The additional criteria in the State Health Plan addressing pediatric facilities are viewed in conjunction with the

---

**23.** Although generally, an administrative agency has ancillary jurisdiction to rule on the validity of regulations in a challenge to the application or enforcement of those regulations, *see Pennsylvania Association of Rehabilitation Facilities v. Foster,* 147 Pa.Cmwlth. 487, 608 A.2d 613, 616 (1992) and *Croner, Inc. v. Department of Environmental Resources,* 139 Pa.Cmwlth. 43, 589 A.2d

1183, 1187 (1991), the Board's powers are created and restricted by the Act.

**24.** *See* comment, *supra,* p. 8.

**25.** Whether a regulation is valid is a question of law for the court to determine. *See Harkins v. Commonwealth, Department of Public Welfare,* 75 Pa.Cmwlth. 454, 462 A.2d 894 (1983); *Elkin.*

need formula, and if there is no need for a new facility in a particular region, a CON would not be granted to a pediatric facility, even though it could meet the additional criteria, i.e., serving a population of 2 million people and could perform a minimum of 100 procedures annually. (R.R. 605a).

Passavant's biostatistics expert, Dr. Stewart Anderson, testified that the need formula underestimated the need for adult open heart surgery facilities because the incidence of pediatric open heart surgery is much lower than the incidence of adult open heart surgery. (R.R. 668a, 867a). However, Dr. Anderson admitted that the formula as used by the Department is an accurate projection of need for total population and that it is logical. (R.R. 668a, 867a, 670a). In addition to the criticism of the need formula, Passavant presented an alternative formula that restricted the factors in the numerator to adult populations. (R.R. 844a–863a, 885a–892a).

Upon considering all of the evidence, we conclude that the need formula as set forth in the State Health Plan, using total population factors, is reasonable and valid. The use of total population factors produces an accurate projection of the total need for open heart surgery facilities and, as such, complies with the stated purpose of the State Health Plan to establish appropriate investment and utilization patterns in the Commonwealth. Section 202 of the Act, 35 P.S. § 448.202. We believe the Department considered creating a formula to predict adult need separately and determined that it was inappropriate and the formula based on total population was accurate and useful. There was no abuse of discretion. That Passavant suggested an alternative formula, which is perhaps better in certain circumstances,[26] does not prove that the need formula set forth in the State Health Plan is unreasonable or, as suggested by the Board, fundamentally flawed.

### IV.

In summary, we hold that (1) the Board exceeded its statutory authority in addressing a challenge to the need formula set forth in the State Health Plan in the context of a CON appeal and in reversing the Department's denial of a CON; (2) the Board exceeded its statutory authority in determining that the need formula set forth in the State Health Plan was inaccurate and in concluding that an additional CON was available and must be awarded to Passavant; and (3) the need formula utilizing factors based on total population is reasonable and the Department did not abuse its discretion in adopting it. Accordingly, we reverse the order of the Board.

### ORDER

AND NOW, this 10th day of April, 1996, the order of the Pennsylvania State Health Facility Hearing Board, dated March 1, 1995, Docket No. CN93–001, is reversed, and we hold that in accordance with the attached opinion, the need formula set forth in the State Health Plan is reasonable and valid.

---

**26.** Passavant's contention that the formula underestimates the need for adult facilities would only be true when a region has a pediatric-only facility. Because pediatric-only facilities must serve at least 2 million people, based on the State Health Plan, any underestimation is extremely limited.